IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LINDA GONZALES-JOHNSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-0833-CV-W-NKL-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Pending before the Court is Plaintiff Linda Gonzales-Johnston's Motion for Summary Judgment [Doc. # 8]. Plaintiff seeks judicial review of the Commissioner's denial of her request for disability benefits under Titles II and XVI of the Social Security Act. The Administrative Law Judge ("ALJ") found that Plaintiff was not entitled to benefits, and such determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Plaintiff has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the ALJ's

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

decision is not supported by substantial evidence in the record as a whole, the Court reverses the ALJ's decision and remands with instruction to award benefits.

**I.      Background**

Plaintiff filed her applications for disability benefits on May 30, 2003. She was born in 1952, and alleged that she became disabled beginning May 2, 2002. (Tr. 47, 225, 227). In her Disability Report, she alleged disability due to high blood pressure, Hepatitis C, migraines, and because she is a recovering alcoholic and addict. (Tr. 62). Plaintiff has a high school diploma and has received business computer technology training. (Tr. 300). She has seven children, but lives with only her teenage daughter.

Plaintiff testified that she last performed substantial gainful activity in May 2002 when she worked for the license bureau. According to her testimony, she was terminated because her Hepatitis C condition worsened. She stated her symptoms include fatigue, diarrhea and headaches. (Tr. 301, 306). Plaintiff also testified that she suffers from depression. (Tr. 305).

Plaintiff was diagnosed with Hepatitis C in October 1999. She testified that her body rejected a medication therapy and that she sees her doctor every three to six months for monitoring and blood work. (Tr. 302). Plaintiff also testified that she experiences urinary incontinence on a daily basis. She stated that because of this she wears a pad at all times, and that she changes the pad two or three times each day. (Tr. 303).

In addition, Plaintiff testified that she experiences low back pain, which radiates down into her right hip, leg and knee. She experiences numbness and sometimes her knees give out. (Tr. 304).

Plaintiff admitted that she has a history of substance abuse, but testified that she has been clean for five years. She attends AA and NA meetings three to four times each week for an hour at a time. She sponsors five women through these programs. (Tr. 310).

Plaintiff testified that sometimes she experiences difficulty bathing because of fatigue. And, sometimes she has unpredictable diarrhea. This may occur three to four times a day for about two hours. (Tr. 302-303, 307). She stated that during this two hour period, she goes to the bathroom at least thee to four times. (Tr. 308). Plaintiff testified that although she sleeps 10 to 13 hours nightly, she still lies down daily from 11:00 a.m. to 1:00 p.m. because of fatigue. (Tr. 305-306).

Plaintiff testified that her impairments affect her daily living. When performing household chores she has to pace herself because of fatigue, headaches and diarrhea; she also receives a lot of help from her daughter. (Tr. 301, 303-304). Plaintiff stated that she tires easily and has to schedule her week's activities so as not to overexert herself. (Tr. 309).

Plaintiff testified that her impairments affect her ability to work. She stated that she can lift five to ten pounds. And, if she stands 15 to 30 minutes, she has to sit for 1.5 to 2 hours before she can stand again. (Tr. 308). But, Plaintiff also testified that she can sit for an hour after which she needs to stand and stretch for about ten minutes before

sitting again. (Tr. 309). She stated that she might be able to walk four blocks in about 45 minutes. (Tr. 308-309).

Finally, Plaintiff testified that her activities included going to the movies, playing board games with her daughter, watching television, going to church and reading. (Tr. 309). She further testified that she does some creative writing and was thinking about getting back into painting. (Tr. 309).

### A. Summary of Medical Evidence

In 1999, Plaintiff was diagnosed with Hepatitis C. On September 26, 2002, doctors at Truman Medical Center examined Plaintiff and diagnosed her with chronic daily headaches. (Tr. 157-160). On January 15, 2003, she had a liver biopsy done. The biopsy showed piecemeal necrosis. (Tr. 150).

On March 12, 2003, Plaintiff had a follow-up appointment at Truman Medical Center. At that time, she was controlling her migraine headaches with Cafergot. She also complained of upper respiratory tract (URT) viral symptoms, with dry nose and frequent scanty nose bleed with sniffing. She denied chest pain, shortness of breath or abdominal pain. She denied alcohol use. (Tr. 199). Plaintiff was diagnosed with hypertension, well controlled; glucose intolerance; and Hepatitis C with elevated liver enzymes. She was also diagnosed with migraines, well controlled. An addendum to the visit's report notes that Plaintiff was not a good candidate for some medications because of her Hepatitis C. (Tr. 154-156).

On June 19, 2003, Plaintiff was again examined at Truman Medical Center. She complained of pain and numbness in the right lower extremity, associated with numbness and also back pain which increased with movements. She was diagnosed with Hepatitis C. Other diagnoses included hypertension, controlled with Inderal; right lower extremity pain; and back pain. (Tr. 152-153). Plaintiff had a negative straight leg raise test and normal range of motion in her hips, knees and ankles. (Tr. 153). X-rays of Plaintiff's lumbar spine revealed compression deformity of T11 and T12 with degenerative spurring, but revealed no fractures, malalignment or narrowing of the disc space. (Tr. 193).

On October 17, 2003, Plaintiff went to the emergency room complaining of lightheadedness and dizziness. She informed the doctors that she had a mild amount of blood streaking in her vomit and that she had a few black stools. She was admitted to the Intensive Care Unit upon suspicion that she had a GI bleed. The GI bleed was found to have most likely been caused by a chronic nose bleed, the blood of which was swallowed. The nose bleeds were probably caused by a low platelet count. She was also diagnosed with gastritis (inflammation of the stomach lining) and duodenitis (inflammation of the intestine). The doctors noted that she had a low white blood cell count, anemia and thrombocytopenia (an abnormal drop in the number of blood cells involved in forming blood clots). (Tr. 110). A chest x-ray revealed old granulomatous disease (a hereditary disease affecting the immune system) and a compression fracture of the distal thoracic spine. (Tr. 186-188).

On October 27, 2003, Plaintiff was admitted to Truman Medical Center with complaints of nausea, vomiting and mild amounts of bright red blood in her vomit. Her diagnosis did not change from that of the previous months. (Tr. 117-118). Plaintiff was discharged from the hospital on October 29, 2003. Her activities were not restricted. (Tr. 117).

On November 12, 2003, Plaintiff complained of fatigue, diffuse abdominal and chest pain, diarrhea, nausea and some dizziness. She was diagnosed with hypertension, diffuse abdominal and chest pain, nausea, and Hepatitis C. Oxycodone was prescribed for severe pain. One medication was discontinued because it was causing her diarrhea and Zantac was prescribed. During this visit, Plaintiff's white blood count was normal, but she was still anemic. (Tr. 147-148).

On December 3, 2003, a physician from the GI Clinic at Truman Medical Center noted that Plaintiff had a medical condition causing extreme fatigue and indicated that she required the help of a home nurse. (Tr. 144). Two weeks later, Plaintiff's diarrhea had been resolved and her migraines were under control. (Tr. 142).

A January 16, 2004, colonoscopy revealed a single small diverticulum in the colon and small non-bleeding internal hemorrhoids. (Tr. 138). On February 26, 2004, a CT of the pelvis revealed mild fatty infiltration of the liver. (Tr. 169-172).

On March 3, 2004, Plaintiff had a follow-up examination at Truman Medical Center. Her liver function tests were normal and her pancytopenia (a shortage of blood cells) was resolved, though she complained of dizziness. (Tr. 136-137).

6

On March 11, 2004, Plaintiff went to the urology clinic at Truman Medical Center complaining of leaking urine and seeing brownish blood on her Depend pads. She reported that she leaks urine daily. She stated that she voids six times a day and wakes up wet during the night four times a week. She stated that she started noticing bloody discharge about a year ago and believes this is coming from urine. (Tr. 134). A physical examination revealed a blood pressure reading of 104/61 and a 25 pound weight loss from the previous year. Diagnoses included wetness, Hepatitis C with weight loss and questionable history of dark blood versus brown discharge on pad. (Tr. 135). On March 26, 2004, she returned to the urology clinic for urinary frequency, stress incontinence and for a urodynamics examination. She was diagnosed with urinary incontinence as well as pelvic relaxation. A conservative treatment with medication and bladder training was recommended. (Tr. 133).

On May 12, 2004, Plaintiff was again examined at Truman Medical Center. She indicated that she was having problems with migraines, but that her medication was controlling it. She reported she was still not using alcohol, non-prescribed drugs, and tobacco. She was diagnosed with hypertension, migraines, nausea and Hepatitis C. (Tr. 221-222).

On March 14, 2005, Plaintiff complained of recent multiple falls, once or twice a day, and intermittent tingling in the medial aspects of her legs. She had gained about 20 pounds since her last visit. On physical examination, her abdomen was diffusely tender. Physical therapy was recommended for muscle strengthening and weight loss. (Tr. 293-

294).

On March 24, 2005, a physical therapy low back assessment was performed. Plaintiff complained of bilateral right knee pain and low back pain. She reported that her knees gave out. She described the pain as constant, burning and aching. She received gait and stairs training with a cane. Other exercises were attempted but she could not tolerate them. (Tr. 290). On March 31, 2005, Plaintiff was approved for physical therapy for low back pain with suspect lower extremity problems. (Tr. 286). She completed 14 sessions of physical therapy. (Tr. 268).

On May 25, 2005, Plaintiff went to Truman Medical Center for follow-up. She stated that she felt better overall. (Tr. 264-265).

On June 24, 2005, Plaintiff had an annual examination. At the examination, she complained of feeling fatigued and having difficulty climbing two flights of stairs. (Tr. 259-260).

### B.     Vocational Expert's Testimony

A vocational expert ("VE") testified at Plaintiff's hearing. The VE listed and classified Plaintiff's past relevant work as license clerk, light and semiskilled; bagger, light to medium and unskilled; nurse aide, medium to very heavy and semiskilled; cook helper, light to medium and unskilled; hat and cap sewer, sedentary to light and semiskilled; painter helper, light to medium and semiskilled; and assembler small products, light and unskilled. (Tr. 105, 312).

8

The ALJ asked the VE to assume an individual of the same age, education and past work experience as Plaintiff who could lift 20 pounds occasionally, ten pounds frequently; could not work in any type of food or medical area because of Hepatitis C; and who would require a ten minute unscheduled break to use the bathroom. (Tr. 312). The VE responded that such a person could perform Plaintiff's past work as a license clerk; bagger (as Plaintiff described it, but not as described by the Dictionary of Occupational Titles); hat and cap sewer stocking worker; and small parts assembler. (Tr. 312-313).

The ALJ asked the VE to assume a second hypothetical individual who would be limited to lifting ten pounds occasionally, five pounds frequently; would only be on her feet two hours at a time; could only occasionally balance, stoop, crouch, kneel, crawl, or climb; could not work in food or medical jobs; and would require two or more unscheduled breaks per day for 15 minutes or more. (Tr. 313). The VE responded that such an individual would not be able to sustain employment if ongoing breaks were needed on a continuous basis everyday. (Tr. 313).

### C. The ALJ's Decision

After considering the record, the ALJ found that Plaintiff had the severe impairments of Hepatitis C, hypertension, hyperlipidemia (an elevation of lipids in the bloodstream), possible diabetes, migraine headaches, fatigue, gastritis, diarrhea, urinary incontinence, and minor compression deformity of T11-T12. (Tr. 20). The ALJ next determined that Plaintiff's impairments did not meet or equal any of the Commissioner's

listings of impairments. (Tr. 20). He determined that Plaintiff had the residual functional capacity (RFC) to lift up to 20 pounds occasionally and ten pounds frequently. (Tr. 20). The ALJ found that Plaintiff could not work around food or medical products. (Tr. 20). The ALJ also found that Plaintiff would require one unscheduled break each day. (Tr. 20). After comparing Plaintiff's past relevant work and RFC, the ALJ determined that Plaintiff could return to her past relevant work as a license clerk. (Tr. 20). Therefore, he determined that Plaintiff was not under a disability as defined by the Social Security Act. (Tr. 20).

## II.     Discussion

To establish that she is entitled to benefits, Plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A). The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997). In this case, there is not substantial evidence on the record as a whole to support the ALJ's conclusion that the Plaintiff was not credible.

In analyzing a claimant's subjective complaints of pain, an ALJ is required to examine: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and

10

aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000). An ALJ may discount a claimant's subjective complaints of pain if there are inconsistencies in the record as a whole. *See Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996); *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996).

The record in this case contains substantial medical evidence that Plaintiff had Hepatitis C, urinary incontinence and infection, regular diarrhea and migraine headaches. While there were occasions, such as August 3, 2004, when Plaintiff did not report her symptoms, the record as a whole shows that Plaintiff's medical ailments were pervasive. Simply because a doctor reports that a particular condition is stable does not mean the condition has been resolved or cured. Plaintiff was unable to do her job at the license bureau as a result of her impairments and there is no evidence in the record that her condition improved, even after she was let go.

Moreover, the ALJ erred by finding that Plaintiff's specific complaint of fatigue was not credible. Plaintiff testified that fatigue limited her ability to function and perform her daily activities. For example, she must pace herself when doing household chores. (Tr. 301-303). And, she has to rest before attending her daughter's school events or going grocery shopping. (Tr. 309). Plaintiff testified that she lies down for a couple of hours each day. (Tr. 305-306). Though only the December 3, 2003 letter from Truman Medical Center directly stated that Plaintiff suffered from fatigue, her consistent medical diagnoses of diarrhea, migraines, urinary incontinence and Hepatitis C (all without

11

exaggeration) are sufficient to support her claim.  Furthermore, Plaintiffs daily activities were consistent with those of someone suffering from fatigue.  In short, there is not substantial evidence in the record from which the ALJ could have reasonably concluded that Plaintiff was lying when she testified that she suffers from fatigue.

Finally, the ALJ erred by finding that receipt of benefits was a motivating factor in Plaintiff's decision to leave her employment.  The ALJ discussed Plaintiff's work record and described it as scattered and somewhat erratic with fair earnings in some years but little or no earnings in most years.  The ALJ acknowledged that Plaintiff had substantial earnings from 2000 to 2002, but specifically criticized Plaintiff's pre-2000 work history.  Plaintiff's earlier years were not spent working for money because Plaintiff was raising seven children.  Raising children in lieu of maintaining formal employment is not evidence that an individual is unwilling to work.  The ALJ erred when he concluded that Plaintiff's lack of work history (when she was raising her children) supports the conclusion that receipt of benefits was a motivating factor in Plaintiff's decision to leave her job.

## III. Conclusion

A review of the record reveals that the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 8] is GRANTED.  The decision of the Commissioner is REVERSED and REMANDED with instruction to award benefits.

s/ Nanette K. Laughrey
　　　　　　　　　　　　　　　　　　　　NANETTE K. LAUGHREY
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: July 31, 2007
Jefferson City, Missouri